Erik Martin
Martin & Sibilsky, PLLC
1200 West Magnolia Ave., Suite 210
Fort Worth, TX   76104
817-945-2300
ATTORNEYS FOR CELTIC BANK CORPORATION

IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 16-41222 |
| MAIN STREET SCHOOLS, LLC | § | |
| Debtor | § | CHAPTER 11 |
| | § | |

**MOTION TO DISMISS OR CONVERT PURSUANT TO BANKRUPTCY CODE SECTION 1112(B)(4) FILED BY CELTIC BANK CORPORATION WITH WAIVER OF 30-DAY HEARING REQUIREMENT AND REQUEST FOR HEARING**

**NO HEARING WILL BE CONDUCTED ON THIS MOTION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS MOTION WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION.  IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT.  IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING.  IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN.  THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Celtic Bank Corporation ("*Celtic Bank*"), a secured creditor and party in interest in the above-styled proceeding and files this its Motion to Dismiss or Convert Pursuant to Bankruptcy Code Section 1112(b)(4) Filed by Celtic Bank Corporation (the "*Motion*") and in support thereof respectfully shows this honorable Court as follows:

## SUMMARY OF ARGUMENT

1.    Cause exists to dismiss or convert this case because it was not filed in good faith, there is no reasonable likelihood of reorganization, and the debtor fraudulently disobeyed a prior order of this Court.  Bad faith is a harsh allegation.  It is one that Celtic Bank does not make lightly; however, there is no other description that more aptly fits this case.  Given the Debtor's historic, documented, blatant disregard for its obligations to its creditors and this Court, this case must be dismissed or converted pursuant to Section 1112(b)(4) of the United States Bankruptcy Code (the "***Bankruptcy Code***").

2.    For several years, the debtor, Main Street Schools, LLC ("***Main Street***") has engaged in a pattern of delay and delusion with respect to its ability to operate this business at a profit.  Main Street has repeatedly defaulted on its debts to Celtic Bank and to taxing authorities, and then negotiated forbearances or payment plans, promising that business was improving, yet never taking active steps to improve the business, such as seeking additional capital.  This pattern has continued, unchanged, even during and after dismissal of Main Street's prior bankruptcy case, filed in 2013.

3.    More alarming, the Debtor's affiliate, and previous co-debtor, Schoolco Real Estate, Ltd. ("***Schoolco***"), fraudulently transferred the real property known as 7400 Hawk Road, Flowermound, Texas 75022 (the "***Property***") to the Debtor, to avoid a deed-in-lieu of foreclosure that was part of the settlement disposing of Schoolco's prior bankruptcy case, agreed to by the Debtor, <u>and approved by this Court</u>.  The Debtor's principal, and also the principal of Schoolco, executed this transfer while Celtic Bank attempted, in good faith, to work out payment plans with the Debtor.

4. As the Court may recall, Main Street and Schoolco were before this Court just two years ago. Main Street operates a school on the Property, which is (was) owned by Schoolco. Though the two are ostensibly separate companies, Main Street has occupied and used Schoolco's single asset, the Property, for years, <u>without paying rent</u>. Yet even without the burden of rent, Main Street could not operate its school out of the red. In addition, Main Street exhibited disregard for rules and consistently failed to timely file its taxes.

5. During the eleven months that Main Street spent in bankruptcy from March 2013 to February 2014, Main Street showed that it had no intent to follow the Court's rules or to take meaningful steps to reorganize its business. Instead, Main Street used bankruptcy as a place to hide from the consequences of its poor business decisions. At each turn, Main Street failed to comply with the basic requirements set forth in the Bankruptcy Code and this Court's Local Rules of Bankruptcy Procedure until threatened with dismissal of its case. For example, within the first five weeks of Main Street's previous bankruptcy, this Court entered an Order to Show Cause why the case should not be dismissed because Main Street had failed to appear at a status hearing. Order To Show Cause 1, *In re Main Street Schools, LLC* 13-40615 (Bankr. E.D. Tex. April 15, 2013), ECF No. 24. Just a few months after that, the United States Trustee filed its Motion to Dismiss or Convert Pursuant to 11 U.S.C. § 1112(b) because Main Street had failed to file any monthly operating reports or pay quarterly fees. United States Trustee's Motion to Dismiss or Convert Pursuant to 11 U.S.C. § 1112(b) With Waiver of 30 Day Hearing Requirement 3, *In re Main Street Schools, LLC* 13-40615 (Bankr. E.D. Tex. August 13, 2013), ECF No. 61. Only after the United States Trustee filed its motion did Main Street pay its quarterly fees and file its monthly operating reports.

6. Main Street never confirmed a plan of reorganization. Instead, after eleven months in bankruptcy, it dismissed its bankruptcy case pursuant to a settlement agreement with Celtic Bank approved by this Court (the "Court Approved Settlement Agreement"). Order Approving Motion of Main Street Schools, LLC and Schoolco Real Estate, Ltd. For Approval of Proposed Settlement Agreement 1, *In re Main Street Schools, LLC* 13-40615 (Bankr. E.D. Tex. February 4, 2014), ECF No. 109, and Exhibit A to Motion of Main Street Schools, LLC and Schoolco Real Estate, Ltd. For Approval of Proposed Settlement Agreement, *In re Main Street Schools, LLC* 13-40615 (Bankr. E.D. Tex. January 9, 2014), ECF No. 107. A true and correct copy of the Court Approved Settlement Agreement is attached hereto as **Exhibit A.**

7. The Court Approved Settlement Agreement includes the following features: (a) Main Street and Schoolco's affirmation of the debt due and owing to Celtic Bank under the Note (defined below) as not less than $1,273,974.53 plus any attorney's fees that may be allowed; (b) modification of the amortization schedule and maturity date on the Note resulting in a nearly 50% reduction of the monthly payment under the original terms of the Note; (c) execution and delivery of a General Warranty Deed to the Property in favor of Celtic Bank (the "***Deed***") for Celtic Bank to hold in escrow until such time as Main Street and Schoolco default on the Note, in which case, the Deed "shall be released without further order of the Bankruptcy Court or other court … and Celtic shall be permitted to file and record the Deed pursuant to governing state law;" and (d) dismissal of the two bankruptcy cases with prejudice to refiling for one year.

8. It is worth noting that a key provision of this deal was the Deed, which would allow Main Street the opportunity to get back on track with its creditors, and allow Celtic Bank to take ownership of the property, upon default, <u>without incurring the added time and expense of Court</u>

intervention. The Court obviously agreed that this was a good deal for both parties, and granted the settlement dismissing the case.

9. After its previous bankruptcy case was dismissed, even though it had achieved a significant reduction in its monthly Note payment, Main Street continued to struggle and returned to its usual pattern of defaulting on payments to Celtic Bank as well as other creditors. See Summary of Loan History, attached hereto as **Exhibit B.** Within three months of dismissing its previous bankruptcy case, Main Street defaulted by failing to make the minimum payments due under the Note, as modified and reduced by the Court Approved Settlement Agreement. Celtic Bank worked with Main Street by accepting late payment and waiving the late fee on multiple occasions.

10. Within one year of dismissing its previous bankruptcy case, Main Street was delinquent in paying property taxes. See June 16, 2015 Notice of Default for Non-Payment of Past Due Property Taxes, attached hereto as **Exhibit C**.

11. The last payment received by Celtic Bank from Main Street on the Note was on September 28, 2015. On November 5, 2015, Celtic Bank sent Main Street a formal Notice of Default and Demand for Payment. *See* **Exhibit D**. While in discussions with Celtic Bank regarding yet another forbearance, and in violation of the Court Approved Settlement Agreement as well of the covenants in the Note and deed of trust, Schoolco executed and recorded a special warranty deed transferring the Property to Main Street, without any notice to Celtic Bank. *See* **Exhibit E**. This transfer rendered worthless the Deed that Celtic Bank had bargained for and which this Court had approved in the Court Approved Settlement Agreement. Accordingly, after Main Street defaulted on the Note, and after substantial effort on the part of Celtic Bank to work

out a solution with the Debtor, Celtic Bank attempted to record the Deed, only to learn from the County Clerk that Schoolco no longer owned the property.

12. Accordingly, Celtic Bank posted the Property for sale on July 5, 2016. On the eve of foreclosure, July 4, 2016, Main Street filed this case.

13. It appears that Main Street hopes to again use bankruptcy to hide from its creditors without engaging in a meaningful effort to reorganize. Indeed, it is hard to imagine what sort of reorganization Main Street could convince the Court is possible. Main Street earns even less per month than it did at the onset of the previous bankruptcy, and it is not hard to see why. When one compares the budget attached to the Emergency Motion for Authority to Use Cash Collateral (the "*Current Budget*") with the budget attached to the cash collateral motion filed in the previous bankruptcy (the "*Previous Budget*") it is clear that Main Street is cutting some very crucial corners. *Compare* Exhibit A to Emergency Motion for Authority to Use Cash Collateral, ECF No. 4 and Exhibit A to Emergency Motion for Authority to Use Cash Collateral, *In re Main Street Schools, LLC* 13-40615 (Bankr. E.D. Tex. March 7, 2013), ECF No. 4. For example, the Previous Budget included line items for landscaping, fire marshal, waste, cleaning, pest control and transportation. The Current Budget includes none of those items. It is hard to understand how Main Street is going to entice new families to enroll when there is no waste service, no cleaning service, and no pest control. Further, it is impractical to believe that Main Street will be able to effectively reorganize given that its monthly gross revenue is $5300 per month <u>less</u> than the gross revenue listed in the Previous Budget.

14. Further, Main Street is not paying rent to its landlord, Schoolco, a guarantor of the Note, and is still not able to turn a profit.

15. Main Street has shown that it is unable to manage its business so that it is able to pay its debts as they come due. Further, Main Street has behaved in a deceitful and fraudulent manner to deprive Celtic Bank of the precise remedy that this Court approved. The Bankruptcy Code was not designed to allow deceitful debtors without a reasonable likelihood of reorganization to hide from their creditors. Cause exists to dismiss or convert this case under Bankruptcy Code Section 1112(b)(4), and Celtic Bank respectfully asks this Court to dismiss this case in the best interests of creditors.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## PROCEDURAL BACKGROUND

17. On or about July 4, 2016, Main Street sought protection under the Bankruptcy Code by filing a petition for relief pursuant to Chapter 11 of the Bankruptcy Code.

## FACTUAL BACKGROUND

18. On or about December 13, 2006, Main Street and Schoolco executed a promissory note (the "***Note***") made payable to the order of First National Bank of Arizona (the "***Original Lender***") in the principal face amount of $1,281,5000.00 with a stated final maturity date of December 13, 2024 and a monthly payment of principal and interest of $12,251.82. A true and correct copy of the Note is attached as **Exhibit F**.

19. In order to secure the obligations of Main Street and Schoolco to the Original Lender under the Note, (a) Schoolco executed that certain Deed of Trust (Security Agreement, Assignment of Leases and Rents, and Financing Statement) (the "***Deed of Trust***") dated as of

December 13, 2006, as made by Schoolco, as Grantor, in favor of Original Lender, as Lender, and George Wommack, III, as Trustee, as recorded in the Real Property Records of Denton County, Texas, on December 15, 2006, as Document Number 2006-152716; and (b) both Main Street and Schoolco executed that certain Security Agreement dated as of December 13, 2006, as made by Main Street and Schoolco as Borrowers and Original Lender as Lender (the "*Security Agreement*"). True and correct copies of the Deed of Trust and the Security Agreement are attached as **Exhibits G** and **H** respectively.

20. The indebtedness due and owing under the Note is further secured by UCC Financing Statements filed with the Texas Secretary of State. True and correct copies of the UCC Financing Statements are attached as **Exhibit I.** The Note, Deed of Trust, Security Agreement and UCC Financing Statements are referred to collectively as the "*Loan Documents*."

21. In 2008, the Office of the Comptroller of the Currency closed the Original Lender, and the Federal Deposit Insurance Corporation ("*FDIC*") became the receiver of the Original Lender. On or about March 2009, the FDIC, as receiver for the Original Lender, assigned to Celtic Bank the Note, Deed of Trust, Security Agreement, UCC Financing Statements and all other related documents in that certain Loan Sale Agreement and Assignment and Assumption of Interests and obligations dated March 27, 2009 between FDIC as Assignor and Celtic Bank as Assignee. The Assignment of Deed of Trust was recorded in the Real Property Records of Denton County, Texas on November 20, 2009 as Instrument Number 2009-135013. A true and correct copy of the Assignment of Deed of Trust is attached hereto as **Exhibit J.**

22. As noted above, on February 4, 2014, pursuant to the Court Approved Settlement Agreement, Main Street affirmed its debt to Celtic Bank, modified the amount of the monthly

payment, and granted Celtic Bank the Deed (defined above) for Celtic Bank to record in lieu of foreclosure in the event of a future default, and as security for the reaffirmation agreement.

23. On November 20, 2015, while in discussions with Celtic Bank to, again, restructure the debt, Schoolco executed that certain special warranty deed conveying the Property to Main Street in order to avoid foreclosure and with the intent to defraud Celtic Bank, in violation of the Court Approved Settlement Agreement.

**RELIEF REQUESTED**

24. Celtic Bank seeks dismissal or conversion of this case for cause. 11 U.S.C. § 1112(b). Bankruptcy Code Section 1112(b)(1) provides:

> [O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

The debtor's bad faith in filing a bankruptcy case can constitute cause for dismissal or conversion. *Humble Place Joint Venture v. Fory (In re Humble Place Joint Venture),* 936 F.2d 814, 816-817 (5th Cir. 1991); *Little Creek Development Co. v. Commonwealth Mortgage Corp. (In re Little Creek Development Co.),* 779 F.2d 1068 (5th Cir. 1986)("Numerous cases have found a lack of good faith to constitute 'cause' for lifting the stay to permit foreclosure or for dismissing the case."); *In re 1701 Commerce, LLC,* 447 B.R. 652, 657 (Bankr. N.D. Tex. 2012).

25. The Fifth Circuit stated:

> Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. Findings of lack of good faith in proceedings based on §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors

rather than on any single datum. Several, but not all, of the following conditions usually exist:

(1) the debtor has one asset, such as either undeveloped or developed real property, encumbered by secured creditors' liens,

(2) debtor has engaged in improper pre-petition conduct,

(3) the debtor's property has been posted for foreclosure, and the debtor has tried unsuccessfully to prevent this foreclosure in state court,

(4) the filing of bankruptcy enabled the debtor to evade court orders,

(5) the debtor employs few or zero employees other than its principals,

(6) there is little or no cash flow or source of income to sustain a reorganization, and

(7) there are few if any unsecured creditors and their claims are relatively small.

*Little Creek*, 779 F.2d at *1073*.

26. Several of the key factors listed above appear in this case. For example, Main Street has one asset – the Property that Schoolco conveyed to it in contravention of the Court Approved Settlement Agreement and various covenants in the Loan Documents. Main Street has engaged in improper pre-petition conduct by accepting the Property in violation of the Court Approved Settlement Agreement and covenants in the Loan Documents and by failing to inform Celtic Bank of the Property transfer. Main Street filed this bankruptcy on the eve of foreclosure. Main Street has few employees other than its principal, it has few unsecured creditors, and little or no cash to sustain a reorganization.

27. However, as the Bankruptcy Court for the Western District of Texas observed, "a slavish recitation of the facts reminiscent of the illustrative factors listed in *Little Creek* will not suffice to establish bad faith…" *In re Sentry Park, Ltd.,* 87 B.R. 427, 430 (Bankr. W.D. Tex. 1988). Instead, the Court should focus on whether there has been an abuse of the bankruptcy process. *Id.* Thus, though most of the *Little Creek* factors are evident here, what is more important

is that this debtor has consistently engaged in a pattern of delay and delusion and has shown no inclination to act any differently. As the Fifth Circuit observed, findings of lack of good faith are frequently based on certain recurring patterns. In its dealings with Celtic Bank, Main Street has repeatedly delayed and defaulted on note payments until threatened with foreclosure. In its dealings with this Court, Main Street has repeatedly delayed and been delinquent on obligations until threatened with dismissal. In its business dealings, Main Street has repeatedly invested the absolute minimum to stay in business, yet maintained an unreasonable hope of rehabilitation.

28. Bankruptcy Code Section 1112(b)(4) states: "for purposes of this subsection, the term 'cause' includes – (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (B) gross mismanagement of the estate." Main Street's failure to provide for a minimum level of service at the Property will necessarily lead to a diminution of the estate and illustrates Main Street's lack of commitment to rehabilitate its business. Further, exposing children to potential harms caused by lack of pest control and waste service rises to a level of gross mismanagement.

29. Main Street's bankruptcy filing is an improper use of the bankruptcy process. As the Fifth Circuit noted, "[t]he purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state. If there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raison d'etre*…" (citations omitted). *Id.*

30. Main Street's business is not viable. If Main Street's business were viable, it would have used the breathing spell and reduced monthly mortgage payments from its previous bankruptcy to improve its business, increase enrollment and increase its revenues. Instead, Main Street has allowed its business to further deteriorate and has even lower revenues than it did before

its previous bankruptcy. Further, Main Street has deliberately engaged in fraudulent conduct in violation of the Court Approved Settlement Agreement. In the words of the Fifth Circuit, "Neither the bankruptcy courts nor the creditors should be subjected to the costs and delays of a bankruptcy proceeding under such conditions." *Id.*

31. Based on the actions of the Debtor, and the unreasonable likelihood of reorganization, cause exists to dismiss or convert this case under Bankruptcy Code Section 1112(b)(4), and Celtic Bank respectfully asks this Court to dismiss this case in the best interests of creditors.

WHEREFORE Celtic Bank respectfully prays that this Court: (i) dismiss or convert this case, for cause, pursuant to Bankruptcy Code Section 1112(b)(4); (ii) set a hearing on this Motion at the convenience of the Court and the parties; and (iii) grant Celtic Bank any other relief to which it may show itself justly entitled.

Submitted this 4th day of August 2016.

Respectfully submitted,

**MARTIN & SIBILSKY, PLLC**

 /s/  Erik K. Martin

By: Erik K. Martin
Texas Bar No. 24060227
**Martin & Sibilsky, PLLC**
1200 West Magnolia Ave., Suite 210
Fort Worth, TX  76104
817-945-2300

**ATTORNEYS FOR CELTIC BANK**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served on the following listed persons through the Court's electronic notification system as permitted by Appendix 5005 to the Local Rules of the United States Bankruptcy Court for the Eastern District of Texas and to the following parties and parties identified on the Court's Master Mailing Matrix by First Class United States Mail, postage prepaid, on August 4, 2016.

/s/ Erik K. Martin

Erik K. Martin

**Debtor**
Main Street Schools, LLC
8718 Tyler Drive
Argyle, TX 76226

**Counsel for the Debtor**
Eric Liepins
12770 Coit Road
Suite 1100
Dallas, TX 75251
eric@ealpc.com

**Counsel for the United States Trustee**
John M. Vardeman
UST Office
110 N. College St., Suite 300
Tyler, TX 75702
john.m.vardeman@usdoj.gov

**Texas Workforce Commission**
John Stern
Assistant Attorney General
c/o Sherri K. Simpson, Paralegal
Attorney General's Office
Bankruptcy & Collections Division
P.O. Box 12548
Austin, TX 78711-2548