IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

IN RE:                    )   BK. NO:  16-41222-BTR

                          )

MAIN STREET SCHOOLS, LLC )

        D E B T O R.      )


                *   *   *   *   *   *   *   *   *   *

                   TRANSCRIPT OF PROCEEDINGS

                *   *   *   *   *   *   *   *   *   *


        BE IT REMEMBERED, that on the 6th day of July, 2016,

before the HONORABLE BRENDA T. RHOADES, United States

Bankruptcy Judge at Plano, Texas, the above styled and

numbered cause came on for hearing, and the following

constitutes the transcript of such proceedings as hereinafter

set forth:

<u>P R O C E E D I N G S</u>

1

2          COURTROOM DEPUTY:  The next matter is Main

3  Street Schools, LLC.  Case 16-41222.  Motion for authority to

4  use cash collateral.

5          THE COURT:  Okay.  Appearances.

6          MR. MARTIN:  Derrick Martin on behalf of

7  Celtic Bank.

8          MR. LIEPINS:  Your Honor, Eric Liepins for the

9  debtor.

10          THE COURT:  Okay.

11          MR. LIEPINS:  Your Honor, we're here today on

12  the debtor's interim order -- interim motion to use cash

13  collateral.  The debtor operates a montessori school out in

14  Flower Mound.  My understanding from Mr. Martin that the Bank

15  does not oppose the debtor's interim use of cash collateral.

16  I do have Mr. Vesterman here to testify regarding the needs

17  for these funds and the status of the school.  And,

18  additionally, we have spoken to your Clerk before the

19  hearing.  And if the Court were to grant cash collateral, we

20  would be asking for the July 26th date for a final.

21          THE COURT:  Okay.  You may proceed with a

22  proffer, unless there's an objection.

23          MR. MARTIN:  No objection.

24          THE COURT:  All right.  You may proceed.

25          MR. LIEPINS:  May I approach, Your Honor?

1          THE COURT:  You may.

2          MR. LIEPINS:  Your Honor, if called to

3  testify, he'd testify his name is William Vesterman.  That he

4  is the owner of the debtor.  And that Main Street Schools

5  operates a montessori school in Flower Mound, Texas.  And

6  he's had -- has operated that school since 2006.

7          He would testify the school suffered a loss of

8  employment as a result of a loss of its director last year.

9  And that the debtor has now replaced that director with a

10  certified director.  Currently the debtor has 37 students,

11  would be the testimony.  And that the debtor has prepared a

12  budget with respect to the cash needs of the company going

13  forward.

14          He would testify that what is marked as Exhibit A is

15  the budget that he prepared regarding the cash needs of the

16  company going forward.  And that he has reviewed the

17  historical records of the company to complete this budget.

18  He would testify that he believes these are the actual and

19  necessary needs of the school to remain in business for the

20  next month.

21          The debtor would testify that it obtains monies through

22  tuition of its students.  And that without the use of the

23  ability to use the tuition it receives, the debtor would not

24  be able to stay in operation.

25          The debtor would testify that during the summer months,

1   it has lower enrollment than it will once school starts.  He

2   would testify that the debtor currently owes money to Celtic

3   Bank.  He understands, furthermore, that Celtic Bank is

4   claiming a lien on the debtor's incoming tuition payments.

5       He would testify that once the summer is over, starting

6   on the 22nd of August, the school's enrollment will increase

7   to approximately 55 students.  And that the students will --

8   that the numbers will increase between July and August.

9       He would testify that this will cause an increase in

10  the debtor's income during this time period.  He would

11  further testify that he is willing to provide Celtic with a

12  lien on any funds generated from tuition payments

13  post-petition.  And he would testify that the expenses set

14  forth on Exhibit A are solely for new expenses going forward.

15      That would be Mr. Vesterman's testimony, Your Honor.

16  And at the time, I would move for Exhibit A to be admitted.

17              THE COURT:  Okay.  Exhibit A is admitted.

18  Let's have the witness step forward and be sworn.

19              (The witness was sworn by the courtroom deputy.)

20              THE COURT:  All right.  Would you state your

21  name for the record, sir.

22              THE WITNESS:  William Vesterman.

23              THE COURT:  Thank you.  And you were in the

24  courtroom when counsel proffered your testimony?

25              THE WITNESS:  Yes, ma'am.

1                    THE COURT:  Now that you've been sworn, would

2   you adopt that as your sworn testimony?

3                    THE WITNESS:  Yes, ma'am.

4                    THE COURT:  All right.  Does anyone wish to

5   cross?

6                    MR. MARTIN:  Your Honor, I think Mr. Liepins

7   can answer any questions that we have.

8                    THE COURT:  Okay.  You may be seated then.

9   Thank you.

10       Any other evidence you wish to present, Mr. Liepins?

11                    MR. LIEPINS:  No other evidence at this time,

12  Your Honor.

13                    THE COURT:  All right.  I'll hear any

14  arguments.

15                    MR. LIEPINS:  Your Honor, the debtor has filed

16  a motion to use the cash collateral.  The cash collateral in

17  this case is fairly unique, since it is tuition payments that

18  parents will be giving in the future.  To the extent those

19  are considered accounts receivable of the debtor, although

20  they haven't actually attended the school yet, that's really

21  what they are.  The debtor is willing to provide Celtic with

22  a lien on the cash that it receives from tuition generated

23  post-petition.  It believes that the debtor's income, based

24  upon the testimony, will remain current and actually increase

25  over the next few months.  And that that will benefit Celtic

1   and provide them with adequate protection during this interim

2   period.  We are asking the Court to allow the debtor to

3   continue its operations on an interim basis and use what may

4   be the cash collateral of Celtic to do that, Your Honor.

5                MR. MARTIN:  Your Honor, I think the Bank is

6   fine with the interim.  We just have a few questions.  I

7   mean, it's our position that we have a lien on everything

8   that the debtor owns.  And -- so I'm not sure how the debtor

9   is going to be able to grant replacement liens for adequate

10  protection.

11               THE COURT:  By providing post-petition

12  services.  You don't have liens on post-petition services.

13               MR. MARTIN:  Well, I think we have a lien in

14  everything, in all of their income.  And I think it was --

15               THE COURT:  Since when and how?  Have you read

16  552 of the Bankruptcy Code?

17               MR. MARTIN:  I will review it.

18               THE COURT:  Okay.

19               MR. MARTIN:  So we had a question about

20  adequate protection.  And then --

21               THE COURT:  Okay.  Here's my question to you.

22  How much is the -- so are you saying you're not consenting to

23  use of cash collateral today?

24               MR. MARTIN:  We just have a question on what's

25  going --

1                    THE COURT:  That wasn't my question if you had

2      questions.  My question is, are you consenting to the use of

3      cash collateral today?

4                    MR. MARTIN:  In the interim, yes.

5                    THE COURT:  Okay.  On an interim basis.

6      THat's what I need to know.

7          So we can tee it up for final, okay.  How much cash

8      dose the debtor have on hand currently, as of the petition

9      date, roughly?  I just want some ball park numbers so we

10     understand the scope of the problem.

11                   MR. LIEPINS:  Somewhere around $9,000 is what

12     I remember.

13                   THE COURT:  9 thousand?

14                   MR. LIEPINS:  9, because we filed right before

15     tuition payments were due.

16                   THE COURT:  Okay.  That's fine, so 9,000 is

17     how much cash the debtor had?

18                   MR. LIEPINS:  Right.

19                   THE COURT:  Okay.  So any other cash the

20     debtor would be using is from post-bankruptcy services

21     provided and earned through the tuition to be paid, right?

22                   MR. LIEPINS:  Correct, Your Honor.

23                   THE COURT:  All right.  So -- and the Bank is

24     asserting liens on quote/unquote everything.  I assume that

25     includes real estate; is that right?

1                    MR. MARTIN:  Yes, Your Honor.

2                    THE COURT:  Okay.  Is the debtor's position

3    there's equity in the real estate, yes or no?

4                    MR. LIEPINS:  No.

5                    THE COURT:  No.  There's no equity in the real

6    estate?

7                    MR. LIEPINS:  Correct, Your Honor.

8                    THE COURT:  Okay.  So do you agree?  Is that

9    the Bank's position?

10                   MR. MARTIN:  Yes, Your Honor.  There's no

11   equity.

12                   THE COURT:  Okay.  So there's nothing to

13   adequately protect there.  Okay.  So what other assets do you

14   have liens on that might be diminishing?

15                   MR. LIEPINS:  Theoretically my tables and

16   chairs, Your Honor.

17                   THE COURT:  Okay.  But that's not cash

18   collateral.  That's not cash.

19                   MR. LIEPINS:  Right.

20                   THE COURT:  Okay.  All right.  Just so we're

21   all clear, since it sounds like you all may or may not have a

22   potential dispute at the final hearing.  I'd invite you to

23   look at Section 552 of the Bankruptcy Code, as well as the

24   law regarding that.  I'd also invite you to look at the

25   difference between, quote/unquote, rents and services

1   rendered post-petition and earned post-petition and your

2   ability to have liens on any of that.  And even outside of

3   bankruptcy, I'm not sure that there are liens on funds earned

4   by the debtor post -- for services, for future services.  I'm

5   not sure, unless they are ARs, I suppose.  But you all

6   have -- you're going to have to prove it up to me, is what

7   I'm telling you.  And you telling me you have liens on,

8   quote/unquote, everything, and your documents, even if they

9   said, You have liens on, quote/unquote, everything, I'm not

10  sure is adequate.  And there's a whole body of law in

11  bankruptcy about Section 552 and what ti means.

12      So I'd invite you to take a look at that before you come

13  back.  And you may have liens.  I don't know.  But it's not

14  going to be an automatic, Oh, yeah, you have liens, because I

15  don't understand the law to be that way.  Okay?

16              MR. MARTIN:  No, I agree, Your Honor.  The

17  debtor was here a few years ago when the case was dismissed,

18  or that was the settlement agreement where he re-affirmed the

19  Bank's liens in, quote/unquote, everything.  But I understand

20  it's not post-petition services.  So we will take replacement

21  liens and --

22              THE COURT:  Okay.  They're granting you, as I

23  understand you as part of your agreement today for the use of

24  cash collateral on an interim basis.  They're granting you

25  liens on the tuition that is due, that comes due and is

1   collected between now and the final hearing for the use of

2   the cash collateral to adequately protect you for the use of

3   the 9,000, roughly, in cash collateral the debtor is

4   currently holding.  Okay?

5        When we get to the final hearing, if you all don't have

6   an agreement about how you're going do this, you're going to

7   have to prove up what liens you have in the cash that is

8   entitled to adequate protection.  And you're going to have to

9   prove up that they're somehow adequately protected.  Right?

10             MR. MARTIN: Yes.

11             THE COURT:  So if you all don't agree, we'll

12   have that hearing at final hearing.  I just don't want -- I

13   don't want you all to show up at the final hearing and not be

14   prepared, or say, Oh well, you know, we get all of these

15   things because here we are in bankruptcy and the Rules are a

16   little bit different.

17        Meantime, I'm going to approve the use of cash

18   collateral, based on the agreements of the parties as

19   announced on the record today on an interim basis, as set

20   forth in Exhibit A and admit Exhibit A, as evidence of the

21   budget between the parties.  You'll submit that order,

22   Mr. Liepins.

23             MR. LIEPINS:  Yes, Your Honor.

24             THE COURT:  We'll have a final hearing.  Let's

25   do that, also, on the 26th of Jul at 9:30 a.m.  Is that good

1  for everybody?  Is that a good date?

2            MR. LIEPINS:  That's fine.  I'll circulate the

3  order to Mr. Martin.

4            THE COURT:  All right.  Anything further from

5  the parties?

6            MR. LIEPINS:  Not today, Your Honor.

7            MR. MARTIN:  No, Your Honor.

8            THE COURT:  All right.  Thank you.  Parties

9  are excused and we're adjourned.

10            (End of Proceedings.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2          I, CINDY SUMNER, do hereby certify that the

3    foregoing constitutes a full, true, and complete

4    transcription of the proceedings as heretofore set forth in

5    the above-captioned and numbered cause in typewriting before

6    me.

7

8

9

10

11

12

13

14                              /s/Cindy Sumner

15                              _____

16                              CINDY SUMNER, CSR #5832
                                Expires 12-31-17
17                              National Court Reporters
                                16 Gettysburg Lane
18                              Richardson, Texas  75080
                                214 651-8393
19                              Firm #417

20

21

22

23

24

25